(No. 1745—

Town of Sterling, Claimant, vs. State of Illinois, Respondent.

*Opinion filed November 13, 1934.*

Sheldon & Brown, for claimant.

Otto Kerner, Attorney General; John Kasserman, Assistant Attorney General, for respondent.

Mr. Justice Yantis delivered the opinion of the court:

The Town of Sterling, situated in Whiteside County, Illinois, has filed its claim as a *quasi* public corporation, a political subdivision of the State of Illinois, and bases its claim of $16,715.43 against the State on the fact that the State, through its Department of Public Works and Build-

ings, accepted and took over, on or about the 12th day of November, 1927, and is now using a strip of brick and cement pavement that was constructed by claimant and paid for by it, and that the State in accepting said section of highway incorporated same in and made it a part of Route No. 40 between the City of Sterling and the Village of Milledgeville, Illinois. The complaint does not allege whether Route No. 40 was constructed under the terms and appropriations of the Sixty Million Dollar Bond Issue Act or under the One Hundred Million Dollar Bond Issue Act, but a stipulation was entered into between the parties hereto that the strip of pavement for which reimbursement is asked was laid over a township highway, which was later included as a part of the County State-Aid-System of highways; that the County of Whiteside later abandoned said route as a State-Aid Route on March 12, 1927, at which time it was incorporated in and became a part of the State Bond Issue Route No. 40 and was then and there taken over for maintenance by the State Division of Highways; further that payments on the contract for the construction of that portion of State Bond Issue No. 40 that lies between Sterling and Mt. Carroll were made as follows: $2,375.36 from the General Road Fund appropriation of the Division of Highways, and $6,675.00 from the One Hundred Million Dollar Bond Issue Fund.

The question of whether an award in reimbursement of the Town of Sterling can be made is largely based upon whether the section in question comes within the Sixty Million Dollar Bond Issue Act or of the One Hundred Million Dollar Bond Issue Act. No provision is made under the former for reimbursement to townships for existing roads utilized by the hard road system. Section 10 (Cahill, Chapter 121, Section 192), applies to construction work previously made by a county and the State jointly, or by a county alone. Under the One Hundred Million Dollar Bond Act, (Cahill, Chapter 121, Section 198), provision is made that,

"If the Department of Public Works and Buildings utilizes and makes such paved road (constructed by the county and State jointly or by such county alone or into a township, under township organization or a road district in a county not under township organization over a paved road constructed by the county with township or road district funds) shall be determined in the manner hereinafter provided for and an amount of money equivalent to the cost or share of cost paid by said county, township or road

district shall be set apart and allotted by said department to such county,. township or road district."

As to whether this section of road can be construed to be one of the roads provided for under the One Hundred Million Dollar Bond Act depends upon the construction of Section 198 (9), Chapter 121, which reads:

"The general location of the routes upon and along which said proposed roads are to be constructed shall be substantially as described in this section * * *.

### "ROUTES 1 TO 46 INCLUSIVE

"Said road to be constructed along and upon those routes or those parts of routes described in Section 9 of an Act * * * approved June 22, 1917 *upon which no durable hard-surfaced road shall have been constructed.*"

From the foregoing, it appears that only those routes or those parts of routes of 1 to 46, inclusive, upon which no hard-surfaced road had been constructed at the time of the passage of the One Hundred Million Dollar Bond Act on June 29, 1923, were to be included under the terms of the latter Act. Unless that portion of State Bond Route No. 40 between Sterling and Mt. Carroll was constructed as a part of and under the One Hundred Million Dollar Bond Issue, there is no legal provision for a refund for the section of township road here involved. From the stipulation it appears that the balance of this strip or portion of Route No. 40 between Sterling and Mt. Carroll was paid for as follows: $2,375.36 from General Road Fund of Division of Highways and $6,675.00 from the One Hundred Million Dollar Bond Issue. The cost of the brick pavement constructed by the Town by Sterling and taken over by the Department as a part of Route No. 40 was $16,715.43. The proof indicates and claimant in its reply argument concedes, that one-half of this amount is all that claimant would equitably be entitled to because of the age and life of such road although claimant further contends that interest to the amount of $2,611.88 ought also in equity be allowed to claimant. It appears that some construction work was done on this portion of Route No. 40 during 1917, before the passage of the One Hundred Million Dollar Act; that the section designated as Section 4, from Mt. Carroll to Chadwick was placed under contract May 23, 1924. There is grave doubt in the minds of the court whether this section of road can be considered under the reimburse-

ment section above quoted, due to the apparent intent of the Legislature to include only such routes or portions of routes between 1 and 46 upon which *no durable hard-surfaced road shall have been constructed,* but resolving the doubts in favor of claimant, and under the evidence appearing in the record, the court deems it proper to recommend an award. There is no provision under which interest can be properly allowed, and an award will therefore be made in the sum of $8,357.71.